OPINION
Arthur G. Lapping ("appellant") appeals the July 17, 2000 nunc protunc judgment entry by the Trumbull County Court of Common Pleas, granting a directed verdict in favor of HM Health Services ("HM"), Humility of Mary Healthcare Corporation ("Humility of Mary"), and St. Joseph Riverside Hospital ("St. Joseph Riverside"), collectively referred to as "appellees." For the reasons stated below, we affirm in part, reverse in part and remand the decision of the lower court.
Appellant is a licensed osteopathic, family-practice physician with board certification. Appellant held medical staff privileges at Warren General Hospital ("Warren General"). On January 3, 1996, a purchase agreement was signed and executed whereby Warren General and its affiliates were purchased by HM, a newly created entity. Prior to the purchase agreement, Humility of Mary operated St. Joseph Riverside. Subsequent to the purchase agreement, HM operated the newly formed, St. Joseph Health Center ("St. Joseph Center"), with locations at the former locations of Warren General and St. Joseph Riverside. Following the execution of the purchase agreement, appellant did not hold medical staff privileges at St. Joseph Center.
On August 25, 1998, upon leave of court, appellant filed an amended complaint naming HM, Humility of Mary, and St. Joseph Riverside as defendants. Appellant alleged breach of contract, tortious interference with a contract, and tortious interference with business relations. Specifically, appellant alleged that HM refused to grant him medical staff privileges at St. Joseph Center, constituting a breach of his intended beneficiary rights under the purchase agreement. Appellant also contended that Humility of Mary and St. Joseph Riverside directly interfered with his rights pursuant to the purchase agreement.
A three-day jury trial commenced on April 3, 2000. At the close of appellant's case, appellees moved for a directed verdict as to all of appellant's claims on the grounds that appellant failed to produce any evidence on the essential elements of his claims. In particular, appellees argued that there was no contract upon which appellant was a third party beneficiary. Appellees further stated that any alleged breach of a contract right was justified and lacked intentional interference. Appellees also contended that appellant did not have a legally protected interest in future business relationships with his patients because such relationships were terminable at will. Appellees averred that appellant failed to present evidence of former patients who left because of his lack of medical staff privileges at St. Joseph Center. Finally, as to appellant's breach of contract claim, appellees asserted that appellant failed to complete a condition precedent when he did not submit an application for medical staff privileges.
The trial court granted appellees' motion for a directed verdict as to all of appellant's claims. The trial court stated that appellant failed to prove actual damages to allow his case to proceed. The trial court indicated that appellant did not introduce any evidence that he lost patients as a direct result of the purchase agreement or that he had to hospitalize a patient at St. Joseph Center. The trial court further stated that it agreed with appellees' argument concerning the lack of a legally protected interest. Next, the trial court stated that section 5.10.1 of the purchase agreement required the submission of an application; therefore, even if appellant was a third party beneficiary to the purchase agreement, appellant failed to satisfy the condition precedent of submitting an application. The trial court further noted that the purchase agreement did not take effect until January 1, 1996; however, all things related to appellant's tortious interference claims took place prior to the existence of the contract. Finally, the trial court determined that a jury could not be asked to stipulate whether damages would ensue if appellant submitted an application because it was uncertain whether appellees would have rejected his application.
Thereafter, on April 7, 2000, the trial court filed a judgment entry, granting appellees' motion for a directed verdict.[1] On April 20, 2000, appellant filed a timely appeal, asserting three assignments of error.
Before setting out appellant's assignments of error, we begin with the standard for reviewing a motion for a directed verdict. Civ.R. 50(A)(4) provides:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 Conversely, if reasonable minds could come to more than one conclusion as to the evidence presented, then a trial court should permit the issue to go to the jury. White v. Ohio Dept. of Transp. (1990), 56 Ohio St.3d 39, 45. A trial court must give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. Darroch v. Smythe, Cramer Co. (Apr. 3, 1998), Lake App. No. 96-L-212, unreported, 1998 Ohio App. LEXIS 1450, at 8, citing Broz v. Winland (1994), 68 Ohio St.3d 521, 526. A motion for a directed verdict does not present a question of fact or raise factual issues; rather, it presents a question of law, even though it is necessary to review and consider the evidence. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence, not the weight of the evidence or the witnesses' credibility. Cater v. Cleveland (1998), 83 Ohio St.3d 24, 33. Therefore, because a motion for a directed verdict presents a question of law, a reviewing court must conduct a de novo review of the trial court's judgment. Nichols v. Hanzel (1996), 110 Ohio App.3d 591, 599; Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13.
We begin with appellant's first assignment of error:
 "[1.] The trial court erred to the prejudice of the plaintiff-appellant by granting defendant HM Health Service's motion for a directed verdict as to its breach of contract claim."
 In appellant's first assignment of error, appellant contends the trial court erred in granting HM's motion for a directed verdict as to his breach of contract claim. Appellant avers that a jury could conclude that he satisfied the medical staff privileges provision of the purchase agreement prior to January 1, 1996. Appellant opines that the purchase agreement did not state that the official St. Joseph form had to be used. Appellant adds that the actions of St. Joseph's employees prevented him from presenting an official application. Appellant further asserts that he has an enforceable right because he was an intended beneficiary under the medical staff privileges provision of the purchase agreement. Finally, appellant argues that he proved loss of patients and revenue.
In order to successfully prosecute a breach of contract claim, a plaintiff must present evidence on the following elements: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff. Doner v. Snapp
(1994), 98 Ohio App.3d 597, 600. HM and Warren General and its affiliates entered into the purchase agreement at issue. Appellant was not a party to that purchase agreement. However, an intended third party beneficiary to a contract may bring a contract action. Thornton v. Windsor House,Inc. (1991), 57 Ohio St.3d 158, 161. Contract rights are not afforded to an incidental third party beneficiary under a contract to which he is not a party. Hill v. Sonitrol of Southwestern Ohio, Inc. (1988),36 Ohio St.3d 36, 41.
The purchase agreement between Warren General and its affiliates and HM includes the following provisions:
 "5.10.1. * * * Buyer represents and warrants that those physicians with medical staff membership at Warren General Hospital who have applied for privileges at St. Joseph Health Center have received the same membership status * * * and the same clinical privileges that they held at Warren General Hospital prior to the Closing. (Emphasis added.)
"* * *
 "8.8. No Third Party Beneficiaries. Except as otherwise expressly provided herein, nothing herein, expressed or implied, is intended or shall be construed to confer upon or give to any person, firm, corporation or legal entity, other than the parties hereto, any rights, remedies or other benefits under or by reason of this Agreement."
 When construing a contract, the intentions of the parties are ascertained from the language of the contract. Blosser v. Enderlin (1925), 113 Ohio St. 121, paragraph one of the syllabus. The Supreme Court of Ohio has applied the "intent to benefit" test to determine whether a third party is an intended or incidental beneficiary:
 "* * * [I]f the promisee * * * intends that a third party should benefit from the contract, then that third party is an `intended beneficiary' who has enforceable rights under the contract. * * * [T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary."
 Hill, supra, 36 Ohio St.3d 36, 40, citing Norfolk Western Co. v. United States (C.A. 6, 1980), 641 F.2d 1201, 1208; see, also, Trinova Corp. v. Pilkington Bros., P.L.C. (1994), 70 Ohio St.3d 271, 278. Section 8.8 allows for intended third beneficiaries under the purchase agreement if they are "expressly provided herein." Section 5.10.1 of the purchase agreement clearly states that those Warren General physicians who applied for medical staff privileges at St. Joseph Center would receive the same membership status and privileges that they held at former Warren General. Dr. Jagdish Patel, the chief of staff of St. Joseph Riverside, testified that Warren General physicians would be "grandfathered," meaning the same status and privileges that they held at former Warren General would transfer to the new entity, St. Joseph Center. Under the "intent to benefit" test, section 5.10.1 expressly confers a benefit on those Warren General physicians who applied for medical staff privileges. Section 5.10.1 was part of the negotiations between HM and Warren General and its affiliates whereby HM agreed to grant those Warren General physicians, who submitted applications, the same status and medical staff privileges that they previously held at former Warren General. As such, Warren General physicians were intended third party beneficiaries under the purchase agreement.
Next, a contract or contract right is formed when all conditions precedent are satisfied. Boblien, Inc. v. Hoge (June 7, 2000), Medina App. No. 2967-M, unreported, 2000 Ohio App. LEXIS 2372, at 4; Carter v.New Buckeye Redevelop. Corp. (Apr. 2, 1998), Cuyahoga App. No. 72501, unreported, 1998 Ohio App. LEXIS 1414, at 7. "A condition precedent * * * is one which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend." Mumaw v. Western Southern Life Ins. Co. (1917),97 Ohio St. 1, 9, quoting Chambers v. Northwestern Mut. Life Ins. Co. (1896), 64 Minn. 495, 497.
Dr. J. Patel testified that, in order to be "grandfathered," Warren General physicians had to submit an application for medical staff privileges before the effective date of the purchase agreement, January 1, 1996. Dr. J. Patel added that the applications of the Warren General physicians went through the credentialing process even though it was agreed that their privileges would transfer.
Article II, Part D of the medical bylaws of St. Joseph Riverside sets forth the credentialing process. First, a completed application is forwarded to the credentials committee, which makes a recommendation. Then, the executive committee, at its next regular meeting, makes the recommendation to the board of trustees, who makes the final decision. On December 21, 1995, a medical staff executive committee meeting was held whereby those Warren General physicians, who applied, were granted the same status and privileges that they held at Warren General. The next meeting of the credentials committee and the medical staff executive committee was held on January 23, 1996.
Appellant testified that, initially, he did not intend to join the staff of St. Joseph Center; however, he decided to apply. On December 27, 1995, appellant's office manager, Rebecca Lynn Luoma, called St. Joseph Riverside to request an application. Sharon Roberts, the medical staff secretary of St. Joseph Riverside, told Ms. Luoma that before she could give appellant an application, she had to get the approval of Dr. J. Patel, who was out of the country. Ms. Roberts testified that she felt uncomfortable because she remembered a problem in the past that involved appellant and his previous medical staff privileges at St. Joseph Riverside. Ms. Roberts also stated that she remembered Vivian Zoumas, the medical staff secretary at Warren General, informing her that appellant did not want medical staff privileges at St. Joseph Center.
The following day, December 28, 1995, appellant and his attorney hand-delivered a letter addressed to Josephine Lawrence, the chief operating officer of St. Joseph Riverside. In that letter, appellant indicated that he was applying to maintain his medical staff privileges at Warren General pursuant to the purchase agreement and that he had a right to be accorded the same membership status. Appellant further stated that he was willing and able to file a more formal application before the acquisition date. Marilyn Waddell, Ms. Lawrence's administrative assistant, testified that Ms. Lawrence asked her to start the credentialing process for appellant. Ms. Waddell mailed appellant a pre-application. Ms. Waddell testified that she was not aware that the pre-application step was eliminated for Warren General physicians so that the credentialing process could be expedited. On Saturday, December 30, 1995, appellant completed the pre-application that he received in the mail and faxed it to the administrative offices that same day.
On January 5, 1996, George Massar, the interim administrator of St. Joseph Center, informed appellant that he no longer had privileges because his pre-application was faxed on Saturday, December 30, 1995; therefore, it was not considered received until the next business day, Tuesday, January 2, 1996. Furthermore, sometime during the first week of January 1996, in an envelope postmarked January 5, 1996, appellant received an application for medical staff privileges. Appellant testified that he had not submitted an application.
Appellant subsequently faxed a letter to Mr. Massar on January 8, 1996, stating that there had to be a misunderstanding because he hand-delivered a letter whereby he applied to maintain his medical staff privileges under the purchase agreement and was willing to fill out any forms. In a subsequent letter dated January 26, 1996, Kevin E. Nolan, president and chief executive officer of HM, informed appellant that he did not submit an application prior to the effective date of the purchase agreement; therefore, he did not avail himself of the credentialing process under the agreement. Mr. Nolan further stated that appellant's pre-application was not received before the effective date of the agreement, January 1, 1996, because he faxed a pre-application on a Saturday and the administrative offices were closed until Tuesday, January 2, 1996. Mr. Nolan indicated that appellant's pre-application would be treated as any other received by the hospital and would be reviewed by the credentialing committee.
During the credentials committee meetings and the medical staff executive committee meetings, held on January 23, 1996, appellant's pre-application was reviewed. The committees stated that appellant's request was tabled pending the receipt of an application. Thereafter, in a letter dated February 1, 1996, Ms. Lawrence, informed appellant that the credentialing committee reviewed his pre-application and that the committee could not proceed further without a completed application.
When reviewing a motion for a directed verdict, the evidence must be construed most strongly in favor of the non-moving party. If reasonable minds could come to more than one conclusion as to the evidence presented, then a trial court should permit the issue to go to the jury. There were numerous references by several witnesses and the trial court that the effective date of the purchase agreement between Warren General and its affiliates and HM was January 1, 1996. However, the actual execution and signing of that purchase agreement took place on January 3, 1996. Section 3.3 of the purchase agreement expressly states that the execution and delivery of the agreement took place on January 3, 1996, the closing date. Consequently, a factual issue arises as to the actual date that the purchase agreement took effect.
Additionally, appellant, an intended third party beneficiary of the purchase agreement, was prevented from performing the necessary condition precedent of filing a formal application prior to the effective date of the agreement. Dr. J. Patel acknowledged that appellant should have been given an application when he requested one on December 27, 1995, or when he appeared in person at St. Joseph Riverside on December 28, 1995. The purchase agreement does not contain any provision stating that those Warren General physicians who wanted to transfer their medical staff privileges had to apply before December 21, 1995, the last meeting of the credentialing committee for that year. Appellant did everything to submit an application before the effective date of the purchase agreement. Dr. J. Patel testified that if appellant had been given an application on December 28, 1995, and if he would have submitted it prior to the effective date of the purchase agreement, then appellant would have been treated as any other Warren General physician who was granted medical staff privileges.
Further, Dr. J. Patel stated that the pre-application that was sent to appellant was also a mistake because Warren General physicians, who wanted to transfer their medical staff privileges pursuant to the purchase agreement, were not required to submit a pre-application. According to Mr. Massar and Mr. Nolan, appellant's pre-application was not considered "received" until January 2, 1996. However, as stated above, an issue is raised as to the effective date of the purchase agreement.
Upon realization of the errors that occurred, appellant was mailed an application. However, this was subsequent to the effective date of the purchase agreement. The fact that appellant did not submit an application after the effective date of the purchase agreement is irrelevant. Mr. Nolan, in a letter dated April 1, 1996, invited appellant to submit an application; however, appellant would have to abide by the results of the credentialing process. Dr. Patel testified the hospital had a right to refuse a doctor who was applying for medical staff privileges without a "grandfathering" provision.
As to the evidence that appellant presented pertaining to his alleged damages or loss, appellant offered the testimony of his office manager, Ms. Luoma, and his accountant, Henry Sforza. Ms. Luoma testified that she noticed a decrease in the number of patients when appellant's privileges were terminated. Ms. Luoma stated that, after the loss of appellant's medical staff privileges, appellant would receive an average of ten requests per month to send his patient's files to another physician. Although issues were raised during cross-examination as to the method that Mr. Sforza used in making his calculations, Mr. Sforza testified that appellant lost $51,590 in 1997 and $115,586 in 1998 as a result of his lack of medical staff privileges. Appellant also testified that his practice declined because he was not on staff at a local hospital and that he noticed a decline in the number of patient visits.
Construing the evidence most strongly in favor of appellant, reasonable minds could come to more than one conclusion as to the evidence presented concerning appellant's breach of contract claim against HM. Our conclusion does not imply that the evidence presented at the close of appellant's case will result in a verdict in his favor. Rather, our conclusion allows the issue to be presented to the jury. A motion for a directed verdict tests the legal sufficiency of the evidence presented, not its weight or the witness' credibility. Appellant's first assignment of error is well taken.
Next, appellant's second assignment provides:
 "[2.] The trial court erred to the prejudice of the plaintiff by granting defendant Humility of Mary Healthcare Corporation's motion for a directed verdict as to plaintiff's tortuous [sic] interference with a contract and business relations claim."
 In his second assignment of error, appellant argues that the trial court erred in granting Humility of Mary's motion for a directed verdict as to his claims for tortious interference with a contract and tortious interference with business relations. Appellant claims that Humility of Mary acted to prevent him from entering into a business relationship with HM because it refused to provide him with an application before the effective date of the purchase agreement. Appellant argues that this interference with his rights was willful since no other Warren General physician needed Dr. Patel's approval prior to receiving an application.
We begin with appellant's claim of tortious interference with a contract. The Supreme Court of Ohio formally recognized the existence of tortious interference with a contract in Kenty v. Transamerica PremiumIns. Co. (1995), 72 Ohio St.3d 415. In Kenty, the Supreme Court of Ohio defined tortious interference with a contract as:
 "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."
 Id. at 418-419, quoting Restatement of Law 2d, Torts (1979), Section 766. To recover under this tort, a plaintiff must prove all of the following elements: (1) the existence of a contract, (2) the defendant's knowledge that a contract existed, (3) the defendant's intentional procurement to breach that contract, (4) the defendant's lack of justification for the procurement to breach the contract, and (5) the damages that resulted from the breach. Fred Siegel Co., L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, paragraph one of the syllabus (reaffirming the elements for tortious interference with a contract in Kenty, supra, at paragraph two of the syllabus).
As stated in our review of appellant's first assignment or error, appellant was an intended third party beneficiary of the purchase agreement between HM and Warren General and its affiliates. Humility of Mary employees prevented appellant from receiving an application when he requested one on December 27, 1995 and December 28, 1995. Warren General physicians did not need the approval of Dr. Patel before receiving an application, nor were they required to submit a pre-application. Appellant presented the testimony of Dr. Stephen M. Plesich, who testified that Dr. Patel previously made a comment that he did not want people like appellant on the staff and that he had gotten rid of him once before. Additionally, as explained in appellant's first assignment of error, appellant presented evidence pertaining to the alleged damages that he incurred.
When reviewing a motion for a directed verdict, the evidence must be construed most strongly in favor of appellant. Appellant presented sufficient evidence on his claim that Humility of Mary tortiously interfered with the performance of his intended beneficiary rights under the purchase agreement. As stated, a motion for a directed verdict tests the legal sufficiency of the evidence presented, not its weight or the witness' credibility. If reasonable minds could come to more than one conclusion as to the evidence presented, a trial court should permit the issue to go to the jury. Once again, it is necessary to state that our conclusion does not imply that the evidence presented at the close of appellant's case will result in a verdict in his favor. Our conclusion merely indicates that, construing the evidence most strongly in favor of appellant, reasonable minds could come to more than one conclusion as to the evidence presented.
Next, we address appellant's claim that Humility of Mary tortiously interfered with a business relationship. The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes the intentional interference with prospective contractual relations, not yet reduced to a contract. Reaganv. Ranger Transportation, Inc. (Dec. 4, 1998), Portage App. No. 97-P-0102, unreported, 1998 Ohio App. LEXIS 5824, at 16. The following elements are set forth for the claim of tortious interference with a business relationship:
 "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of:
 "(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or [,]
 "(b) preventing the other from acquiring or continuing the prospective relation."
 Hoyt, Inc. v. Gordon Assoc., Inc. (1995), 104 Ohio App.3d 598, 603. This court has held that tortious interference of a business relationship is applicable to terminable at will contracts. Reagan, supra, unreported, 1998 Ohio App. LEXIS 5824. The patient-physician relationship is such a relationship that it is terminable at will.
As we stated above, it was error for Humility of Mary employees to deny appellant an application for medical staff privileges when he initiated the request on December 27, 1995 and December 28, 1995. Further, it was erroneous on the part of Humility of Mary to send appellant a pre-application. Such conduct prevented appellant from acquiring the requisite application so that he could enter into the prospective relationship with HM at St. Joseph Center. Appellant presented the testimony of Dr. Plesich, which demonstrates a possible improper interference with appellant's prospective contractual rights as an intended third party beneficiary of the purchase agreement. Further, as indicated above, appellant presented evidence of his alleged damages through his own testimony and the testimony of Ms. Luoma and Mr. Sforza.
If reasonable minds could come to more than one conclusion as to the evidence presented, a trial court should permit the issue to go to the jury. Appellant presented sufficient evidence as to his claim that Humility of Mary tortiously interfered with a business relationship. Our conclusion does not imply that the evidence presented at the close of appellant's case will result in a verdict in his favor. Our conclusion merely indicates that, construing the evidence most strongly in favor of appellant, reasonable minds could come to more than one conclusion as to the evidence presented thus far. Appellant's second assignment of error is well taken.
Finally, appellant's third assignment of error states:
 "[3.] The trial court erred to the prejudice of the plaintiff-appellant by granting defendant-appellee HM Health Service's motion for a directed verdict as to the claim of tortuous [sic] interference with business relations."
 In his third assignment of error, appellant asserts that the trial court erred in granting HM's motion for a directed verdict as to his claim of tortious interference with business relations. Appellant posits that HM wrongfully refused to grant him hospital privileges as guaranteed under the acquisition agreement. Appellant contends that such action interfered with his ability to treat his patients and damaged his business relationship with his patients. Appellant adds that his patients who requested treatment at HM's facilities were advised to follow up with other doctors.
It is important to note that HM was a newly formed entity that did not exist prior to the effective date of the purchase agreement. As explained in appellant's second assignment of error, Humility of Mary employee's prevented appellant from obtaining an application on December 27, 1995 and December 28, 1995. Further, Humility of Mary employees erroneously sent appellant a pre-application. Appellant's claim that HM tortiously interfered with his business relations is misdirected. As such, HM did not intentionally or improperly interfere with appellant's prospective contractual relationship as an intended beneficiary under the purchase agreement. Appellant's third assignment of error is without merit.
In conclusion, construing the evidence presented, most strongly in favor of appellant, reasonable minds could come to more than one conclusion as to appellant's claim for breach of contract by HM and tortious interference with a contract and business relationship by Humility of Mary. This does not imply that the jury would return a verdict in appellant's favor as to those claims. Our conclusion merely indicates that, upon completion of trial, the issues should be submitted to the jury.
For the foregoing reasons, appellant's first and second assignments of error are well taken. Appellant's third assignment of error is without merit. The judgment of the Trumbull County Court of Common Pleas is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
JUDGE DIANE V. GRENDELL, FORD, P.J., NADER, J., concur.
[1] Subsequently, in a July 17, 2000 nunc pro tunc judgment entry, the trial court stated that its April 7, 2000 judgment entry was amended to clarify that the "Defendants HM Health Services, Humility of Mary Healthcare Corporation, and St. Joseph Riverside Hospital's motion for a directed verdict" was granted.